**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA,**
         **Plaintiff,**

**-vs-**                                              **Case No. 6:09-cv-172-Orl-28GJK**

**RICHARD E. MORGAN, MARY A.**
**MORGAN, TRI-MORGAN FAMILY**
**LIMITED PARTNERSHIP, V. JOHN**
**BROOK, JR., CHRISTINE L. BROOK,**
**CITIBANK F.S.B.,**
         **Defendants.**

_____

# ORDER

This is an action by the United States of America ("the United States" or "the Government") to reduce to judgment the federal income tax liabilities of Defendants Richard E. Morgan and Mary A. Morgan (collectively, "the Morgans") and to foreclose on certain real property in order to collect those tax liabilities. The remaining parties—Tri-Morgan Family Limited Partnership ("Tri-Morgan"), V. John Brook, Jr., Christine L. Brook, and Citibank F.S.B. ("Citibank")—have been named as defendants in accordance with 26 U.S.C. § 7403(b) because they have liens on or may claim an interest in the real property at issue.[1]

The case is currently before the Court on the Government's Motion for Summary Judgment Against Richard Morgan and Mary Morgan (Doc. 68). The Morgans filed a

---

[1] Section 7403(b) provides that "[a]ll persons having liens upon or claiming any interest in the property involved in [an action to enforce a lien] shall be made parties thereto." The Brook Defendants hold a recorded judgment lien against Richard Morgan, and Citibank holds a mortgage on the real property. Tri-Morgan is a partnership to which the Morgans purportedly conveyed title to the property during the 1990s.

response (Doc. 72) to the motion that exceeded the allowed number of pages for such a document, and it was stricken by the Court, (Order, Doc. 73). The Morgans were afforded time to file a compliant response, (see id.), but they did not thereafter file another response.[2] Upon consideration of the record in this matter and pertinent law, and as more specifically set forth below, the Court concludes that the Government's motion for summary judgment shall be granted.

## I. Background

For the tax years 1996, 1997, 1998, 1999, and 2000, the Internal Revenue Service ("IRS") has made income tax liability assessments against Defendant Richard Morgan totaling, with interest and penalties, $251,807.48 as of October 16, 2009. (Decl. of Ken Colt, Ex. 1 to Doc. 68). For the tax years 1997, 1998, 1999, 2000, 2002,[3] 2003, 2004, and 2005, the Internal Revenue Service has made income tax liability assessments against Defendant Mary Morgan totaling, with interest and penalties, $289,642.76 as of October 16, 2009. (Id.).

The Morgans acknowledge not paying income taxes beginning in the mid-1990s. Mr. Morgan, who works as a consultant in sales and marketing, explained in his deposition that he decided to stop filing income tax returns after receiving some notices of federal tax liens and doing research about income tax laws. (R. Morgan Dep., Ex. 5 to Doc. 68, at 10, 24).

---

[2]The Morgans did file a "Motion for Court to Rescind Its Order" striking their response memorandum. (Doc. 74). In that motion, the Morgans asked that the Court "reverse" its order striking their memorandum, insisting that "[s]ince it is an impossibility to 'condense' the stricken document to the 'required' 20 pages, and still get all the necessary legal arguments into the document, it must stand as rendered." (Id. at 2). That motion was denied. (Doc. 75).

[3]The Government does not seek to collect any amount for 2001.

After researching the tax code, Mr. Morgan concluded that "they have never . . . presented any law that says a private citizen working in the economy is required to file and pay a personal income tax." (Id. at 27). Since 1996, he has not attempted to pay anything toward his income tax liabilities. (Id.). Mrs. Morgan, who has been a licensed real estate agent for twenty-three years, testified in her deposition that although she has paid taxes to the IRS in the past she stopped because she does not think, "according to their code," that she is a person who owes taxes. (M. Morgan Dep., Ex. 6 to Doc. 68, at 9, 27).

In December 1985, the Morgans purchased some real property at 1317 Majestic Oak Drive in Apopka, Florida ("the Majestic Oak property") and have lived there ever since. (Responses to Requests for Admissions, Exs. 7 & 8 to Doc. 68; R. Morgan Dep. at 9; M. Morgan Dep. at 8-9). In April 1995, by warranty deed, the Morgans purported to transfer title to the Majestic Oak property to themselves as life tenants with the remainder to the "Morgan Family Limited Partnership." (Exs. 7 & 8 to Doc. 68). This transfer was made for little or no consideration—"probably a dollar"—and was made after "some financial person" told them at a financial seminar that property should be put "in some sort of family limited partnership." (Exs. 7 & 8 to Doc. 68; R. Morgan Dep. at 30, 32). Two months later, they recorded a "Corrected Deed" changing the name of the partnership to "Tri-Morgan Family Limited Partnership"—Defendant Tri-Morgan herein. (Exs. 7 & 8 to Doc. 68).

Tri-Morgan was registered as a limited partnership in Nevada because that is where the financial seminar person suggested to register it, but in February 2005 its registration was revoked. (Exs. 7 & 8 to Doc. 68; R. Morgan Dep. at 33). Mr. Morgan stopped sending the filing fees to Nevada, but he did not take any other steps to end the partnership. (R.

Morgan Dep. at 36-37). Mr. Morgan was a general partner in Tri-Morgan and there were no other partners. (Id. at 33). The only asset of Tri-Morgan was the Majestic Oak property, and Tri-Morgan never existed for any purpose other than possession of the Majestic Oak property. (Id. at 36-37).

The property was never transferred back from Tri-Morgan to the Morgans, but Mr. Morgan claims that he and his wife own the property and that Tri-Morgan—which no longer exists—does not have an interest in the Majestic Oak property any more. (R. Morgan Dep. at 31-32). Mr. and Mrs. Morgan make the mortgage payments, pay for the maintenance, pay the utility bills, and pay the property taxes on the property. (R. Morgan Dep. at 29-30; M. Morgan Dep. at 30).

## II. Discussion

### A. Summary Judgment Standards

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The moving party bears the burden of establishing that no genuine issues of material fact remain. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party

will bear the burden of proof at trial." Celotex, 477 U.S. at 322. When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997). A "district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion." United States v. One Piece of Real Prop., 5800 S.W. 74th Ave., Miami, Fla., 363 F.3d 1099, 1102 (11th Cir. 2004).

B. The Merits of the Government's Motion

As earlier noted, the Morgans have not filed a response to the Government's motion for summary judgment that complies with the applicable page limitations. The Court has, as required by Eleventh Circuit case law, considered the Government's motion on its merits.

1. Tax Liabilities of the Morgan Defendants

The United States seeks to reduce to judgment the federal income tax liabilities of Richard Morgan for the years 1996, 1997, 1998, 1999, and 2000 and of Mary Morgan for the years 1997, 1998, 1999, 2000, 2002, 2003, 2004, and 2005. In support of its summary judgment motion, the United States has submitted the Declaration of IRS Revenue Officer Ken Colt and several other exhibits. (Exs. 1-11 to Doc. 68). In his declaration, Revenue Officer Colt attests to the income tax assessments against the Morgans—and penalties and interest accrued thereon—for the years at issue. (Colt Decl., Ex. 1 to Doc. 68).

As correctly noted by the Government, the IRS's assessment of the Morgans' tax debt is presumed to be valid. See United States v. Chila, 871 F.2d 1015, 1017-18(11th Cir. 1989). Upon a showing like the Government has made here of certified copies of records

pertaining to the Morgans' tax debts, the Government establishes a prima facie case and the burden shifts to the Morgans to establish that the tax assessment is not correct. United States v. White, 466 F.3d 1241, 1248 (11th Cir. 2006).

As earlier noted, the Morgans have not filed a compliant response to the Government's motion and have not otherwise presented any evidence or argument regarding the propriety of the tax assessments. And, in their prior filings in this case, they have merely challenged—in arguments that have long been rejected as baseless by numerous courts—the propriety of the imposition and collection of any income tax from individuals by the federal government. See, e.g., Lonsdale v. United States, 919 F.2d 1440, 1448 (10th Cir. 1990) (rejecting such arguments). Accordingly, the Government is entitled to summary judgment as to the establishment of the Morgans' federal income tax liabilities for the years at issue.[4]

### 2. Propriety of Foreclosure on the Majestic Oak Property

The Internal Revenue Code provides in part that "[i]f any person liable to pay any tax

---

[4] Although the Morgans failed to file a response to the Government's motion that complied with the applicable page limits despite being given an extended opportunity to do so, the Court has nonetheless considered, with regard to Mrs. Morgan, the "innocent spouse defense" anticipated by the Government in its motion and asserted by Mrs. Morgan in her deposition. This defense is rejected out of hand. As noted by the Government, the "innocent spouse defense" may apply where the five elements listed in 26 U.S.C. § 6015(b)(1) are met, but plainly none of those elements is satisfied here. Mrs. Morgan recited "innocent spouse" doctrine at her deposition, claiming that the term "just came from her" and that she did not know when she first heard the term. (M. Morgan Dep. at 5, 7). Moreover, the Government seeks to collect deficiencies for income that she herself earned. And, Mrs. Morgan's espousal of tax protester rhetoric at her deposition belies the notion that she "did not know, and had no reason to know" of an understatement of tax. See 26 U.S.C. § 6015(b)(1)(C).

neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. Pursuant to this section, in 2006 and 2007 the Government filed a Notice of Federal Tax Lien with regard to the Majestic Oak property. (Ex. 9 to Doc. 68).

The Government seeks a decree as to sale of the property in accordance with 26 U.S.C. § 7403(c), which provides in part:

> The [district] court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property . . . and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States."

The United States has entered into a Stipulation with the other parties claiming an interest in the property—V. John Brook, Jr., Christine L. Brook, and Citibank. (Doc. 66). In that Stipulation, the Government and these parties agree that Citibank's mortgage and the Brooks' judgment lien are superior to the federal tax liens; that the United States may seek a judgment of foreclosure in order to foreclose the federal tax liens; and that after costs of the sale are paid, Citibank is entitled to be paid first, followed by the Brooks. (Id. at 2-3).

The Morgans have not presented any evidence or argument in opposition to the Government's requested foreclosure of the Majestic Oak property to satisfy the tax debt. Although there is an added wrinkle in this case due to the purported transfer of the property

to Tri-Morgan, the Morgans themselves do not contest that they are the true owners of the property. Even if they did contest it, the evidence clearly points to the conclusion that Tri-Morgan Trust was merely a nominee of the Morgans, and the Majestic Oak property is thus amenable to the collection of the Morgans' tax liabilities.

"'Property' and 'rights to property' for the purposes of 26 U.S.C. § 6321 include 'not only the property and rights to property owned by the delinquent taxpayer, but also property held by a third party if it is determined that the third party is holding the property as a nominee . . . of the delinquent taxpayer." May v. United States, No. 07-10531, 2007 WL 3287513, at *1 (11th Cir. Nov. 8, 2007) (quoting Spotts v. United States, 429 F.3d 248, 251 (6th Cir. 2005)) (alteration in original); accord Shades Ridge Holding Co. v. United States, 888 F.2d 725, 728 (11th Cir. 1989) ("Property of the nominee or alter ego of a taxpayer is subject to the collection of the taxpayer's tax liability."). "[T]he nominee theory stems from equitable principles. Focusing on the relationship between the taxpayer and the property, the theory attempts to discern whether a taxpayer has engaged in a sort of legal fiction, for federal tax purposes, by placing legal title to property in the hands of another while, in actuality, retaining all or some of the benefits of being the true owner." In re Richards, 231 B.R. 571, 578 (E.D. Pa. 1999).

""Factors considered to determine whether property is being held by a nominee of the taxpayer include: (1) whether the taxpayer exercised dominion and control over the property; (2) whether the property of the taxpayer was placed in the name of the nominee in anticipation of collection activity; (3) whether the purported nominee paid any consideration for the property, or whether the consideration paid was inadequate; (4)

-8-

whether a close relationship exists between the taxpayer and the nominee; and (5) whether the taxpayer pays the expenses (mortgage, property taxes, insurance) directly, or is the source of the funds for payments of the expenses." United States v. Todd, No.5:05-cv-343-Oc-10GRJ, 2008 WL 2199873, at *3 (M.D. Fla. Mar. 19, 2008). These factors are not to "'be applied rigidly or mechanically, as no one factor is determinative.'" Id. (quoting In re Richards, 231 B.R. at 579). "The most critical issue is who has substantial control over the property." Id.

The record evidence in this case—as recited in the Background section of this Order—clearly reflects that Tri-Morgan holds or held the Majestic Oak property as nominee of the Morgans and that the Morgans are the true beneficial or equitable owners of the property. All of the factors noted above support this conclusion—(1) the Morgans exercise dominion and control over the property; (2) the property was transferred to Tri-Morgan after Mr. Morgan learned at a financial seminar that property "should" be placed into some type of limited partnership; (3) at most a dollar was paid for the transfer, and there is no evidence that even that dollar came from any source other than Mr. Morgan; (4) Mr. Morgan was the sole partner of Tri-Morgan, which had no other partners; and (5) the Morgans have at all times paid the mortgage, taxes, maintenance costs, and expenses of the property.[5] Thus, whatever interest Tri-Morgan held or holds in the property is only as a nominee for the

---

[5]Although the recording of a deed is a factor that is sometimes also considered, see, e.g., In re Richards, 231 B.R. 571, 579 (E.D. Pa. 1999), and the Morgans did record a deed to Tri-Morgan, this one factor alone is insufficient to overcome the overwhelming evidence on the nominee issue. Moreover, the Morgans do not contest that Tri-Morgan's only purpose was to hold title to the property or that they are the sole owners of this property.

Morgans, and the property is subject to collection of the Morgans' tax liabilities. The tax lien attaches to the Property, and the Property is subject to foreclosure.

### III. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. The Government has established the federal income tax liabilities of Defendants Richard and Mary Morgan for the years at issue. Additionally, the Government has established that the property located at 1317 Majestic Oak Drive, Apopka, Florida may be foreclosed upon to satisfy those tax liabilities in accordance with the Stipulation (Doc. 66) between the United States, V. John Brook, Jr., Christine L. Brook, and Citbank F.S.B. As to these issues, the Motion for Summary Judgment (Doc. 68) filed by the United States is **GRANTED**.

2. **On or before Friday, January 29, 2010**, the United States shall submit a proposed judgment and a proposed order of foreclosure in accordance with this Order and with the terms of the Stipulation (Doc. 66). Such proposed judgment shall include an up-to-date computation of the amounts owed on the tax debt, and these amounts shall be supported by affidavits explaining the computation.

3. This case is hereby **REMOVED** from the March 2010 trial calendar.

**DONE** and **ORDERED** in Orlando, Florida this 12th day of January, 2010.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party